Strafford
No. 99-008

THE STATE OF NEW HAMPSHIRE

v.

CARL CARLSON

February 15, 2001

*Philip T. McLaughlin*, attorney general (*Douglas N. Jones*, assistant attorney general, on the brief and orally), for the State.

*Risa Evans*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

MANGONES, J., superior court justice, specially assigned under RSA 490:3. The defendant, Carl Carlson, appeals his conviction of felonious sexual assault, RSA 632-A:3, II (1996), for unlawfully engaging in sexual penetration with a person who was under the age of sixteen. The defendant argues that the Superior Court (*Nadeau*, J.) erred by ruling that he had opened the door to evidence of his prior sexual encounter with another underaged female and by refusing to grant a mistrial based upon the prejudicial impact of such evidence. The defendant also appeals the trial court's ruling that he was chargeable for a probation violation based upon conduct underlying the criminal conviction because the court failed to find, and the State failed to prove, that he knew the victim was under the age of legal consent. We affirm.

I

The following facts were adduced at trial. On March 30, 1998, at approximately 11:00 p.m., the victim, who was fifteen years of age, and two other girls ages sixteen and thirteen, ran away from a group home where they resided. While they were hitchhiking, a vehicle

with several male occupants stopped and gave them a ride. The girls said that they needed a place to stay for the night. The men drove them to a shopping plaza to use a pay phone and left them there.

A short while later, the men encountered the defendant and told him about the girls. The defendant, who was with his brother, decided to go meet the girls with the hope of having sex that night. He had told his brother earlier that evening that he was having some relationship problems with his fiancée.

The two drove to the shopping plaza and met the girls, and, after some conversation, the girls got into the car. The defendant asked the girls their ages; one said she was seventeen years old, while the victim and the other girl both said they were sixteen. The defendant and his brother questioned the girls on whether they were telling the truth about their ages. The victim testified that when the defendant challenged her averment that she was sixteen, she said, "[F]ine; then I'm not," and he said, "[Y]ou're lying." The defendant testified, however, that he believed the girls' answers about their respective ages because they were "acting real mature for their age [and] for [the] situation they were in." Thereafter, the group went to a motel at the defendant's suggestion. At this point, it was approximately 1:30 a.m. on March 31.

At the motel, the group watched television and eventually discussed sleeping arrangements. They decided to share the only bed in the room. The victim testified that, at some point, she and the defendant engaged in sexual activity, and he digitally penetrated her and engaged in sexual intercourse. She recalled that she was afraid, was trying to figure out what to do and eventually told him that she had to go to the bathroom. She testified that when she returned, the defendant told her that he wanted to continue, and when she said she did not want to, he told her that she had to continue unless one of the other girls would.

The victim spoke with the other girls, who instructed her to lie down and sleep next to them. The defendant then got into bed next to the thirteen-year-old girl and began touching her leg. When that girl moved away from the defendant, he got up and angrily announced that he was leaving. The thirteen-year-old testified that the defendant said, "[F]— this; I'm going home." When the defendant testified in his own defense, however, he stated that he "came to [his] senses" at this point in the evening and said, "I'm leaving. This isn't me." The defendant returned later in the day to give the girls a ride to a public place where there was a telephone. That night, the police discovered the girls and returned them to the group home, and the victim reported the incident to a staff member.

The defendant was indicted on two counts of felonious sexual assault, charging him with engaging in sexual penetration with a person who was at least thirteen years old and less than sixteen years old. One indictment alleged digital penetration, and the other alleged sexual intercourse. At the time of the March 31 events, the defendant was on probation for having committed a felonious sexual assault on a different female who had been under the age of legal consent. His probation officer initiated probation violation charges on the basis that he failed "to be of good behavior and remain arrest free," and failed to refrain from being "in the unsupervised company of females under [the age of] 16." The court consolidated the probation violation charges with the criminal charges. The jury found the defendant guilty of the digital penetration indictment and acquitted him of the sexual intercourse indictment. The court found the defendant chargeable for violating the conditions of probation that he maintain good behavior and remain arrest free. The defendant appeals his criminal conviction and the probation violation finding.

## II

The defendant argues that the trial court erred in ruling that he opened the door to evidence that he had previously engaged in sexual intercourse with a female under the age of legal consent. He also asserts that the trial court erred in denying his motion for mistrial because of the prejudicial effect of such evidence.

## A

The question of the admissibility of the defendant's prior conduct was first raised when the State indicated its intent to cross-examine the defendant with respect to his prior conviction for felonious sexual assault. Specifically, the defendant had been convicted for engaging in sexual intercourse with a female who was under the age of legal consent. That conviction was based upon his relationship with a teenage girl who was the mother of his child. The court precluded the State from introducing this evidence, ruling that "the risk of the jury considering the underlying felony as evidence of guilt in this case [was] extremely high given the similar circumstances under which . . . that crime was committed and this alleged crime was committed."

At trial, the following colloquy occurred during the State's cross-examination of the defendant:

Q. Let's talk about what you describe happening in the hotel room.
Now — actually, before we get to that, your girlfriend, what's her name?

A. Girlfriend?

Q. Your fiancée, or are you married yet?

A. No. Actually, we split up.

Q. Oh, you split up now?

A. Yeah.

Q. Recently?

A. No, when this happened. It's been about seven months.

Q. Mr. Carlson, you're not going to suggest to this jury that you haven't gotten back together with your girlfriend?

A. We've tried.

Q. Kind of an on-again, off-again relationship?

A. No, we tried once.

Q. How long had you been with her before March of 1998 — how long had you been together?

A. Two and a half years.

Q. Excuse me?

A. About two and a half years.

Q. And you've got a 2-year-old child?

A. Yes, I do.

Q. And you have a fight with your girlfriend, or fiancée at the time?

A. It wasn't really a fight. It was more me being hurt. We had a child and she ended up going behind my back and having an abortion.

Q. How old is she?

A. She's 17.

At this point, defense counsel objected and requested a mistrial because the defendant's testimony, as elicited by the State, revealed

that he previously had engaged in sexual intercourse with a female under the age of legal consent. The State contended that the defendant opened the door to the admission of this evidence by testifying, among other things, that at the end of the evening, he announced to the group, "I'm leaving. This isn't me."

The court denied the mistrial motion, ruling that the defendant "directly raised his character for having sex with young women," when he stated: "This isn't me." It, however, foreclosed the State from inquiring further about the defendant's relationship with his former fiancée so that the prejudicial value of the prior acts evidence would not outweigh its probative effect. The defendant declined the court's offer to give a limiting instruction.

Following the verdict, the defendant unsuccessfully filed a motion for a judgment notwithstanding the verdict or, alternatively, for a new trial, again challenging the admission of the prior act evidence. The court ruled that even if the defendant had not opened the door to such evidence, a mistrial was not warranted because he did not suffer irreparable prejudice under the circumstances of the case.

## B

We first review the trial court's ruling that the defendant opened the door to the testimony that he previously engaged in sexual intercourse with an underaged female. The opening-the-door doctrine allows a party to use previously suppressed or otherwise inadmissible evidence to counter a misleading advantage created by the opponent. *See State v. Fecteau*, 133 N.H. 860, 874 (1991). "When a defendant leaves the trier of fact with a false or misleading impression, the State is entitled to counter with evidence to refute the impression created by the defendant and cure the misleading advantage. This rule prevents a defendant from successfully excluding inadmissible evidence favorable to the State and then selectively introducing pieces of this evidence for his own advantage, without allowing the prosecution to place the evidence in its proper context." *State v. MacRae*, 141 N.H. 106, 114 (1996) (quotation omitted). The doctrine, however, is designed "to prevent prejudice and is not to be subverted into a rule for injection of prejudice." *State v. Trempe*, 140 N.H. 95, 99 (1995) (quotation and emphasis omitted).

The trial court is in the best position to gauge the prejudicial impact of particular testimony. *See State v. Bouchard*, 138 N.H. 581, 584 (1994). Therefore, we will not upset the trial court's ruling on whether the defendant opened the door to prejudicial rebuttal evidence absent an abuse of that discretion. *See State v. Taylor*, 139

N.H. 96, 100 (1994). The defendant bears the burden of establishing that the trial court's ruling "is clearly untenable or unreasonable to the prejudice of his case." *Trempe*, 140 N.H. at 98 (quotation omitted).

The defendant argues that his testimony did not create a misleading impression concerning his character for having sexual relations with underaged females. He contends that his denial of the charges was based not on his character but on the surrounding circumstances. In support of his argument, he points out that he, in fact, admitted that he would have had sexual relations with the victim if other circumstances had not thwarted his intent. He further argues that his testimony that he believed that all three girls were at least sixteen years old, the minimum age of legal consent, demonstrates that his 'This isn't me' remark could not have related to his character for engaging in sexual activity with *underaged* females.

We recognize that during his testimony the defendant did not claim to have a puritan character. Indeed, despite his then-existing relationship with his fiancée, the defendant testified that he went to meet the girls that evening with the hope of engaging in sexual relations. He admitted engaging in sexual activity with the victim at the hotel room, and testified that he would have engaged in sexual intercourse but was unable to achieve an erection and did not have access to a condom. The defendant testified, however, to making a remark at the end of the evening that reasonably could have been interpreted by the jury as a disclaimer of his behavior throughout the entire night. That is, the jury could have viewed the "This isn't me" statement as an assertion that his conduct and intentions that night were an anomaly and that he was not of a character to engage in those activities.

■ We reject the defendant's argument that because he believed all the girls were at least sixteen years old, his remark could not have been an assertion that he was not the type of person to engage in sexual activity with females under the age of legal consent. There was evidence before the jury that, if believed, demonstrated the defendant's disbelief in the victim's assertion that she was sixteen. We conclude that, in the context of the totality of the evidence, the jury could have logically interpreted the defendant's remark to be an assertion that it was not within his character to engage in sexual activity with girls under the age of legal consent. That other reasonable interpretations may exist does not preclude application of the opening-the-door doctrine. *See Bouchard*, 138 N.H. at 584. Accordingly, we conclude that the defendant has failed to meet his

burden of proving that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case. Because the court did not err in ruling that the defendant opened the door to the challenged testimony, we need not address the defendant's challenge to the court's ruling on his post-trial motion.

## III

The defendant also argues that the trial court erred in ruling that he was chargeable for a probation violation because the court failed to find that he knew the victim was under the age of legal consent. He asserts that revocation of probation requires a culpable mental state, and thus the State must prove that he knowingly violated a condition of his probation to carry its burden of establishing a probation violation.

As an initial matter, we observe that on the record before us, it is questionable whether the defendant's *mens rea* argument was preserved below. We, however, need not delve into the matter further because we conclude that the argument fails on its merits.

When pursuing a charge for violation of probation, the State must prove "misplaced trust by a preponderance of the evidence." *State v. Field*, 132 N.H. 760, 766 (1990) (quotation and ellipses omitted). "[W]hether the defendant has been of good behavior or has in some way violated the terms of his freedom . . . is not [an inquiry] to establish criminal liability." *Stapleford v. Perrin*, 122 N.H. 1083, 1089 (1982). The defendant contends that the State's burden included a showing that he knowingly violated a condition of probation. Thus, he argues, the State was required to prove, and the trial court was required to find, that he knew the victim was under the age of legal consent. We reject his argument.

■ We have previously recognized that a showing of fault is not required to establish a probation violation when the circumstances underlying the probation violation charge frustrate the fundamental purpose of placing the defendant on probation in the first instance. *See State v. Kochvi*, 140 N.H. 662, 665-66 (1996), *cert. denied*, 519 U.S. 833 (1996). Here, the trial court found by a preponderance of the evidence that the defendant violated the conditions of probation that he remain of good behavior and arrest free. The defendant was placed on probation in connection with a prior conviction for committing sexual assault on a female under the age of legal consent, RSA 632-A:3, II. This offense is a strict liability crime in that an accused cannot assert as a legal defense that he did not know the complainant was under the age of legal consent when penetra-

tion occurred. *See Goodrow v. Perrin*, 119 N.H. 483, 488-89 (1979). The record demonstrates that despite his conviction for engaging in sexual activity with an underaged female, the defendant placed himself in risky circumstances, relying only on the victim's "mature" behavior to substantiate her representation of her age. We cannot say that the trial court abused its discretion when ruling that the State established by a preponderance of the evidence a violation of the good behavior and arrest free conditions of probation. *State v. Woveris*, 138 N.H. 33, 34 (1993) (trial court's finding that defendant chargeable for probation violation reviewed under abuse of discretion standard).

*Affirmed.*

BRODERICK and DALIANIS, JJ., concurred; GROFF, J., superior court justice, specially assigned under RSA 490:3, concurred.