Strafford
No. 2003-654

THE STATE OF NEW HAMPSHIRE

v.

DONALD MORRILL a/k/a SAM W. MORRILL

Argued: July 14, 2004
Opinion Issued: August 27, 2004

*Kelly A. Ayotte*, attorney general (*Laura E. B. Lombardi*, assistant attorney general, on the brief and orally), for the State.

*David M. Rothstein*, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.

DALIANIS, J. The defendant, Donald Morrill a/k/a Sam W. Morrill, appeals his conviction of aggravated felonious sexual assault, *see* RSA 632-A:2, III (1996), arguing that the Superior Court (*Mohl, J.*) erred by ruling that the defendant opened the door to otherwise inadmissible testimonial evidence and, thereby, violated his State and Federal Constitutional rights to a fair and impartial jury trial. We reverse and remand.

The defendant was convicted of aggravated felonious sexual assault against his stepdaughter, N.N. During a visit with her biological father in 1998, N.N. alleged that the defendant had sexually abused her. N.N.'s biological father immediately informed N.N.'s mother, the defendant's then wife, and the authorities. The division for children, youth and families (DCYF) began investigating the allegations. The defendant moved out of N.N.'s home while DCYF investigated. Approximately one week later, N.N.'s mother called DCYF to inform it that N.N. had recanted the allegations. N.N. then told DCYF personnel that she had "lied," and that her "daddy told her to say" that she had been sexually abused by the defendant. Subsequently, DCYF closed the investigation.

In December 2000, N.N.'s mother again called DCYF and alleged that the defendant had sexually abused N.N. DCYF scheduled an interview, although it was never conducted because N.N. was unresponsive. DCYF had no further contact with N.N. or her mother until November 2001. At that time, DCYF personnel conducted an interview with N.N. at her school. She denied that any sexual abuse had occurred. Subsequently, DCYF closed the second investigation into the defendant's alleged sexual abuse of N.N.

In January 2002, the Strafford County Attorney's Office conducted a videotaped interview of N.N, during which she reasserted her allegations against the defendant; this prosecution followed.

The defendant argues that the trial court erred in ruling that the defendant "opened the door" to testimony that the DCYF assessment worker assigned to investigate the 1998 allegations had closed the case "uncomfortably" and "[felt] something happened to this child." During the trial, the defendant objected to the State eliciting this testimony. The trial judge did not rule upon the defendant's specific objection, but ruled that the defendant "opened [the] door as wide as it can be" to allow the testimony elicited by the State. Therefore, the issue before us is whether the trial judge properly ruled that the defendant "opened the door."

 The "opening the door" doctrine applies when one party introduces evidence that provides a justification beyond mere relevance for an opponent's introduction of otherwise inadmissible evidence. *State v. Crosman*, 125 N.H. 527, 530 (1984). The initial evidence must have reasonably created a misimpression or misled the fact-finder in some way. *See State v. Goodman*, 145 N.H. 526, 529 (2000); *Crosman*, 125 N.H. at 531. This rule allows the opposing party to place potentially misleading evidence in its proper context. *State v. Carlson*, 146 N.H. 52, 56 (2001).

Because the trial court is in the best position to gauge the prejudicial impact of particular testimony, we will not upset the trial court's ruling unless it is an unsustainable exercise of discretion. *See id.*; *cf. State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard). The defendant bears the burden of establishing that the trial court's ruling is clearly untenable or unreasonable to the prejudice of his case. *Carlson*, 146 N.H. at 57.

The defendant questioned the DCYF worker about the outcome of the 1998 investigation. She testified that N.N. had recanted the allegations, and the 1998 investigation was closed because DCYF was "unable to substantiate any of the allegations stated and [the] determination was unfounded." The defendant asked her what "unfounded" meant in DCYF terms, and she responded that it meant DCYF could not "substantiate the allegations ... and [was] not able to move forward and prove that it actually happened." The State did not object to this line of questioning.

Prior to this testimony, witnesses had already testified that in 1998 N.N. had recanted her allegations against the defendant. The defendant argues that the testimony that the 1998 investigation was officially closed as "unfounded" and providing the definition of that term did not mislead the jury or give a misimpression that warranted the admission of otherwise inadmissible testimony. We agree.

The State contends that the DCYF worker's testimony gave the misleading impression that DCYF concluded that the assaults did not occur. The DCYF worker's testimony was not that DCYF ceased its

investigation because it concluded that the assaults did not occur; rather, the testimony indicated that the case was closed because N.N. had recanted the allegations, and DCYF was unable to substantiate the allegations independently. A reasonable juror would infer from this testimony that once N.N. recanted and DCYF was unable to substantiate the allegations, the 1998 investigation was closed because there were no longer any allegations to investigate.

The State also argues that the testimony gave the impression that the witness believed N.N.'s recantation. The testimony does not reveal any subjective opinions about this case. The testimony was only that the alleged victim recanted her allegations and that they could not be independently substantiated, and, as a result of the recantation, DCYF closed the case. The witness did not comment on whether she believed the recantation, and her testimony could not have misled a rational juror into drawing a conclusion as to what may have been her personal belief. Additionally, during the State's cross-examination of the DCYF worker, before it attempted to introduce the testimony at issue, it elicited testimony from the witness, based upon her experience as a social worker, that recantations are common in intra-familial sexual abuse cases and do not mean that the abuse did not occur. *Cf. Madeja v. MPB Corp.*, 149 N.H. 371, 392 (2003) (defendant was able to rebut any misleading impression without a finding that the door was opened).

 Because the witness's testimony did not create a misimpression that DCYF concluded the investigation based upon a finding that abuse did not occur, or that the witness personally believed the recantation, the defendant did not "open the door" for otherwise inadmissible testimony to be elicited by the State, *i.e.*, commentary on the veracity of the victim's statements, *see State v. MacRae*, 141 N.H. 106, 108-09 (1996); *State v. Kulas*, 145 N.H. 246, 247 (2000). The defendant has carried his burden of proving that the trial court's ruling was unreasonable to the prejudice of his case. *See State v. Trempe*, 140 N.H. 95, 100 (1995). The trial court's ruling that the "door was opened" was an unsustainable exercise of discretion; thus, because the State does not argue harmless error, we reverse and remand for a new trial. *See id.*

In light of our holding, we need not reach the defendant's remaining issue on appeal.

*Reversed and remanded.*

BRODERICK, C.J., and NADEAU, DUGGAN and GALWAY, JJ., concurred.