Belknap
No. 2003-774

THE STATE OF NEW HAMPSHIRE

v.

CHRISTOPHER ROGAN

Argued: November 30, 2004
Opinion Issued: January 6, 2005

, *Kelly A. Ayotte*, attorney general (*Brian R. Graf*, senior assistant attorney general, on the brief and orally), for the State.

*David M. Rothstein*, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.

GALWAY, J. The defendant, Christopher Rogan, was convicted after a jury trial in Superior Court (*Hollman*, J.) on one count of aggravated felonious sexual assault, *see* RSA 632-A:2 (1996 & Supp. 2001) (amended 2003). On appeal, he argues that the trial court erred when it allowed the State to play an audiotaped interview of the victim. We affirm.

The record supports the following facts. The defendant was indicted on four counts of pattern aggravated felonious sexual assault alleging assaults committed against the victim, who was thirteen at the time.

At trial, Deputy Belknap County Sheriff Denise Miller, an investigator assigned to the case, testified on direct examination as to how she generally conducts interviews in this type of case, and specifically testified regarding her audiotaped and videotaped interview of the victim on November 12, 2002, which lasted approximately two hours. She described how the victim responded when discussing certain aspects of the

investigation, and explained that during her interview of the victim, she was able to obtain details about the events.

On cross-examination of Deputy Miller, defense counsel, using a transcript of the interview, questioned her regarding her thoroughness and about whether she coerced the victim's answers. Following this cross-examination, the State requested permission to play the audiotape. The State argued that the entire audiotape needed to be played to the jury to rebut the inference created during Deputy Miller's cross-examination that the victim's incriminating statements were suggested by Deputy Miller. Defense counsel argued, on the other hand, that the tape should not be played for the jury, because she used a transcript and not the tape to impeach Deputy Miller, and because the focus of her cross-examination was to show that the investigation was incomplete and flawed. After listening to most of the tape, the court allowed it to be played, but first issued a jury instruction limiting its admissibility to "evidence bearing upon the issues of Denise Miller's credibility in her testimony at trial and of whether her investigation was fair and impartial."

At the close of the State's case, the trial court dismissed three of the charges; the jury convicted the defendant on the remaining charge. On appeal, the defendant contends that defense counsel did not "open the door" by creating a misleading impression regarding the interview; and even if she did, the admission of the entire tape was an "unfairly prejudicial remedy."

■■ "Opening the door" is a conclusory term. *State v. Crosman*, 125 N.H. 527, 530 (1984). Once associated more strictly with the doctrine of curative admissibility, it is now more broadly applied to situations in which a misleading advantage may be countered with previously suppressed or otherwise inadmissible evidence. *See id.* at 530-31. The "opening the door" doctrine applies when one party introduces evidence that provides a justification beyond mere relevance for an opponent's introduction of evidence that may not otherwise be admissible. *State v. Morrill*, 151 N.H. 331, 333 (2004). The initial evidence must have reasonably created a misimpression or misled the fact-finder in some way. *Id.* This rule allows the opposing party to place potentially misleading evidence in its proper context. *Id.*

The admissibility of evidence is generally within the trial court's sound discretion. *State v. Ellsworth*, 151 N.H. 152, 159 (2004). Because the trial court is in the best position to gauge the prejudicial impact of particular testimony, we will not upset the trial court's ruling unless it is an

unsustainable exercise of discretion. *See State v. Carlson*, 146 N.H. 52, 56 (2001); *cf. State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard). To show that the trial court's exercise of discretion is unsustainable, the defendant bears the burden of establishing that the decision was clearly unreasonable to the prejudice of his case. *Carlson*, 146 N.H. at 57; *cf. Lambert* 147 N.H. at 296.

Here, during cross-examination, defense counsel placed the integrity of Deputy Miller's investigation at issue with several questions and comments, such as:

> Q: So you—you've made up your mind that [the victim] ... was lying to Detective Simmons before you ever met her?
>
> . . . .
>
> Q: Were you going to coerce her to say anything? . . . .
>
> Q: And if she didn't want to say something, what was your intention?
>
> . . . .
>
> Q: All right. And we know—at least we think we know now, because of what you got her to say in that interview, that it started after the accident . . . .

The State contends that the statements on the audiotape "were relevant to rebut the inference created by the defense through the cross-examination of Deputy Miller that her investigation was unfair and that she had coerced the victim to make incriminating statements." We agree.

The trial court held a hearing out of the presence of the jury regarding the State's request to play the tape, during which defense counsel argued that the focus of the cross-examination of Deputy Miller was to suggest that her investigation was incomplete and flawed. The State countered that defense counsel was "trying to say the nature of the interview put words in the [victim's] mouth and essentially prompted the [victim] to give responses." In fact, defense counsel ultimately admitted that she had indeed suggested that coercion had occurred during the interview.

■ After reviewing the record, we agree with the trial court that defense counsel's cross-examination not only raised the issue that the investigation was flawed and incomplete, but also that "[the victim's] statements were unfairly influenced by the investigator," that the interview was essentially "unfair," and that the investigator used a

"persuasional technique" to prompt the victim. Accordingly, we conclude that defense counsel—having taken the risk of creating a misleading advantage, *see Crosman*, 125 N.H. at 531, or of misleading the fact-finder in some way, *see Morrill*, 151 N.H. at 333—"opened the door" to the admission of evidence that would rebut the misimpression. As such, the State "place[d] [the] potentially misleading evidence in its proper context." *Id.*

We next consider whether the tape was the appropriate evidence for rebutting any misimpression that might have been created by defense counsel. The crux of the defendant's position is that "the tape shed little light on the adequacy of Miller's investigation, because she admitted on cross-examination that she did not do any further investigation based on [the victim's] vague or inconsistent responses." The defendant's argument is, however, misplaced. Playing the tape did not serve to "shed light on the adequacy of Miller's investigation"; rather, its purpose was to allow the jury to assess whether the information on the tape rebutted the misimpression created by defense counsel that the victim's answers were coerced by Deputy Miller. We agree with the trial court's assessment that the tapes were the "best evidence of what happened in terms of whether the interview [was] fair or not," and with the State's position that it was necessary to play the tape to expose the jury to important factors such as tone of voice and presentation of questions and pauses, because such factors could assist the jury in its assessment of whether there was coercion.

Finally, we consider whether playing the tape in its entirety was "unfairly prejudicial" in a manner that greatly outweighed its probative value. The defendant's position is that because the tape was "so long" and because "its content so resonated with [the victim's] testimony . . . the jury was likely to have considered it for its truth." The State responds that this issue was not properly preserved below because defense counsel argued that the transcript, rather than the tape, should have been admitted, and never specifically argued that only a portion of the tape should have been heard by the jury. The State further argues that if the issue was preserved, it was within the trial court's discretion to admit the entire audiotape, citing several cases in which we have allowed lengthy recorded testimony to be admitted. *See, e.g., State v. Dewitt*, 143 N.H. 24 (1998) (upholding trial court's decision to admit entire two-hour videotape). Even if the issue were properly preserved, we would concur with the trial court's ruling. *See, e.g., Handley v. Town of Hooksett*, 147 N.H. 184, 189 (2001).

In *State v. Dean*, we held that a prosecutrix's entire statement was properly admitted to show that the statement as a whole was consistent with her testimony, and that any inconsistencies were insignificant. *State v. Dean*, 129 N.H. 744, 750 (1987). Similarly, in *State v. Morales*, where the defendant had attempted to impeach the victim's testimony by referencing portions of the victim's prior statement, we affirmed the trial court's decision to allow the entire statement of the victim. *State v. Morales*, 136 N.H. 616, 620 (1993). Significantly, we stated: "In affirming the trial court's decision, we do not purport to establish a *per se* rule mandating the admission of a witness's entire prior statement after the witness has been impeached through reference to portions of the statement. Rather, questions concerning ... portions of those statements allowed to rehabilitate an impeached witness, are matters within the sound discretion of the trial court." *Id.*

■ Here, similar to the situations in both *Dean* and *Morales*, defense counsel impeached Deputy Miller by referencing portions of her interview. Playing the audiotape directly pertained to that interview and to the purpose for which the State wanted it introduced—to rehabilitate any misimpression by defense counsel that the victim was coerced. Moreover, playing the entire tape was appropriate because defense counsel, in her attempt to create the impression that the interview was inappropriate, extensively referenced the transcript of the interview. Thus, we conclude that the entire tape had significant probative value.

We next consider whether the admission of the entire tape was prejudicial. We have previously found a defendant's claim of prejudice regarding admitted evidence unfounded, especially in light of the trial court's limiting instruction. *Dean*, 129 N.H. at 750. We have also stated that distinguishing between using evidence for credibility purposes, as opposed to substantive purposes, requires a careful explanation in the limiting instruction. *State v. Fischer*, 143 N.H. 311, 317 (1999).

■ Here, *Fischer's* requirement of a "careful explanation in the limiting instruction" was met when the judge clearly and unequivocally issued the following jury instructions:

> Ladies and gentlemen, you are going to hear now an audiotape of Deputy Sheriff Denise Miller's interview with [the victim] ....
> The tape, which has been admitted into evidence, is not admitted as proof of the truth of the statements contained in the tape but as evidence bearing upon the credibility of certain statements

made by Denise Miller in her testimony at trial and as evidence bearing upon the issue of whether the investigation conducted by Denise Miller was fair and impartial.

In other words, this tape has been admitted into evidence for a limited purpose. You are not to consider the content of this tape as proof of the truth of the statements contained therein, but only as evidence bearing upon the issues of Denise Miller's credibility in her testimony at trial and of whether her investigation was fair and impartial.

Thus, we conclude that the admission of the entire tape was not unduly prejudicial. *See Dean*, 129 N.H. at 750; *see also State v. Smith*, 149 N.H. 693, 697 (2003) (stating that juries are presumed to follow the instructions of the court).

We conclude that the defendant has not carried his burden of proving that the trial court's ruling was unreasonable to the prejudice of his case. *See Carlson*, 146 N.H. at 57. We hold, therefore, that the trial court acted within its discretion by admitting into evidence the contents of the entire tape of Deputy Miller's interview with the victim.

*Affirmed.*

NADEAU, DALIANIS and DUGGAN, JJ., concurred.