Belknap
No. 2005-185

THE STATE OF NEW HAMPSHIRE

v.

GRAHAM GIBSON

Argued: March 8, 2006
Opinion Issued: April 27, 2006

*Kelly A. Ayotte*, attorney general (*Ann M. Rice*, associate attorney general, on the brief and orally), for the State.

*Christopher M. Johnson*, chief appellate defender, of Concord, on the brief and orally, for the defendant.

DUGGAN, J. The defendant, Graham Gibson, appeals his conviction by a jury in the Superior Court (*Perkins*, J.) of three counts of felonious sexual assault. *See* RSA 632-A:3 (Supp. 2005). We affirm.

The record supports the following facts. The victims in this case are identical twin sisters, MG and KG, born in 1981. On December 24, 2000, MG and KG, who no longer lived with their parents, were home visiting. Their father, the defendant, began yelling that he needed scissors for wrapping Christmas presents. Upon hearing the defendant yell, KG became "really angry" and yelled back at him. MG and her mother entered the room at this point. KG then accused the defendant of sexually assaulting her and MG as young children by forcing them to masturbate him. MG agreed, stating that the assaults happened "[a]ll the time."

Approximately three days later, KG, MG and their mother left the house and went to New York, where the mother remained. During the weeks following December 24, 2000, both KG and MG allegedly recovered memories of numerous incidents of sexual abuse by the defendant throughout their childhood until they were approximately thirteen years old. Neither victim received psychological counseling in the months after December 24, 2000, during which time both recovered memories that they described as having been "repressed."

A grand jury returned ninety-seven indictments against the defendant for felonious sexual assault of MG and KG. *See* RSA 632-A:3. Before trial, the defendant moved to dismiss the indictments, arguing that the victims' testimony in support of the charges was based upon recovered memories that were unreliable under *State v. Hungerford*, 142 N.H. 110, 125-26 (1997). The trial court conducted a pretrial evidentiary hearing to determine the reliability of the victims' testimony. At this hearing, the defendant conceded that both MG and KG had continuous memories of incidents involving pink bath mitts. The trial court found that MG and KG had recovered memories of other sexual assaults that had been repressed, and ruled that testimony based upon these memories was "unreliable under *Hungerford*." As a result, the court dismissed eighty-nine indictments, stating in its order that "the [unreliable] testimony is central to [these] indictments." The court ruled, however, that "[KG] and [MG] may testify to events that each always had a recollection of."

Of the eight remaining indictments, two alleged alternative theories for a single event: one charged that the defendant had "touched his penis to [KG's] hand" and the other charged that he had "touched his penis to [KG's] soapy, mitted hand." The other six indictments alleged that the

defendant had "placed his penis in [MG's] baby-oiled and mitted hand" on six separate occasions during six separate weeks. Both KG and MG testified at trial that these particular assaults took place when they were approximately five years old and involved touching the defendant while wearing pink bath mitts on their hands. At the close of the State's case, the trial court dismissed five of the six charges involving MG. The jury convicted the defendant of the remaining three charges.

On appeal, the defendant first argues that the trial court should have stricken portions of MG's testimony and dismissed the charge that the defendant sexually assaulted MG. He contends that MG's testimony was based upon recovered memories that were unreliable under *Hungerford*. Second, the defendant argues that the trial court should have granted his motion for a mistrial following certain testimony by MG. He argues that her testimony prejudiced him by alleging prior criminal acts, and that the prejudice was not sufficiently cured by the court's curative instruction. We address each argument in turn.

*I. Motions to Strike and Dismiss*

The defendant argues that MG's trial testimony "reveal[s] that her testimony drew not only on [her] continuous memories, but also on her previously-repressed memories" and thus was inadmissible under *Hungerford*. He argues that the assault charge involving MG was based upon inadmissible repressed memories and therefore it should have been dismissed.

■ In *Hungerford*, 142 N.H. at 113-16, we addressed whether two witnesses could testify to memories of sexual abuse that they had repressed and subsequently recovered. We described "recovered memory" as memory "that previously had been completely absent from a witness's conscious recollection." *Id.* at 119. We held that "testimony that relies on memories which previously have been partially or fully repressed must satisfy a pretrial reliability determination." *Id.*

■ We then considered "the showing that the proponent must make before evidence of the content of repressed memories will be admissible at trial." *Id.* at 121. We ruled that the proponent of the recovered memory must establish that the memory is reliable, by showing "a reasonable likelihood that the recovered memory is as accurate as ordinary human memory," in order for it to be admissible. *Id.* at 125. Our holding in *Hungerford* applied only to repressed memories that were subsequently recovered; continuous memories are not subject to the rigorous *Hungerford* analysis. *See* N.H. R. Ev. 601.

Here, the defendant argues that MG's testimony was unreliable because it was based upon repressed memories that she recovered after the December 24, 2000 altercation with the defendant. As we noted above, following the pretrial evidentiary hearing, the court dismissed eighty-nine indictments, finding that they were based upon subsequently recovered repressed memories that were unreliable under *Hungerford*. The trial court refused to dismiss six assault charges involving MG, finding that they were based upon her continuous memories. On appeal, the defendant does not challenge the trial court's pretrial ruling. He instead argues that MG's trial testimony was, in fact, based upon her repressed memory.

The admissibility of evidence is a matter left to the sound discretion of the trial court. *State v. Rogan*, 151 N.H. 629, 631 (2005). Because the trial court is in the best position to gauge the prejudicial impact of particular testimony, we will not upset the trial court's ruling unless it was an unsustainable exercise of discretion. *Id.* at 631-32. To sustain his burden, the defendant must show that the trial court's decision was unreasonable to the prejudice of his case. *See id.* at 632.

When questioned by the prosecutor during trial about the frequency of the alleged pink mitt assaults, MG testified, "I don't know how to answer that. I'm not sure if I can answer that." When asked about whether she and KG were naked when the assaults took place, MG stated, "[W]e were naked,—um—yeah. I mean, I feel a little confused." When asked whether there were "some times when [she was] naked and some times not," MG testified, "I can't answer that. I don't—I don't—I can't—I don't know how to answer that. I can't answer that."

The defendant moved to strike the above portions of MG's testimony and dismiss the six assault charges involving MG, arguing that her inability to provide answers indicated that she was relying upon inadmissible recovered memories. The prosecutor objected, asserting that MG's inability to testify resulted from her efforts to comply with the court order and not mention events about which she was not allowed to testify. The trial court denied the defendant's motion without prejudice. The prosecutor resumed questioning MG about the "pink mitt" assaults. MG testified that they did not occur on a daily basis and never took place more than once a day.

At this point, in response to the defendant's repeated objections to the prosecutor's questions and MG's testimony and to clarify the situation, the trial court permitted the parties to *voir dire* MG outside the presence of the jury. During *voir dire*, MG stated, "[T]here's merging in my mind between what happened with the pink mitts and then escalating into something else. Sometimes it seems on the same occurrence. I'm trying to be really careful." MG also stated, "[M]y difficulty answering about

frequency is in conjunction with my—my worry that I'll begin to speak about events, things that also happened, that are not to be talked about with what's going on here." This statement reflects the fact that before trial MG had been informed that she was not permitted to testify to any of the events involving recovered memories.

Following *voir dire*, the trial court permitted the prosecutor to continue his direct examination of MG before the jury. MG testified that she did not think that the pink mitt assaults took place over a period longer than one year. At this point, the defendant renewed his motion to dismiss the six indictments involving MG, arguing that her testimony as to the frequency of the assaults went beyond what she could recall in her continuous memory and relied upon inadmissible recovered memories. The trial court again denied the motion.

On appeal, the defendant relies heavily upon MG's statement that there was "merging" in her mind between events, arguing that "[b]y the time of the trial . . . MG had lost her ability to distinguish her repressed memories from her continuous memories." He concludes that MG's testimony was unreliable under *Hungerford* and, therefore, the court erred in failing to strike it.

*Hungerford* requires the trial court to make a pretrial determination of whether the memory is repressed or continuous. *Hungerford*, 142 N.H. at 121. *Hungerford* prohibits the admission of unreliable testimony based upon repressed memory. *Id.* at 133-34. The trial court complied with the *Hungerford* requirements by conducting a pretrial evidentiary hearing and determining that MG had continuous memory of the pink mitt assaults. The defendant has not shown that MG's statement about "merging" demonstrated that her memory of the pink mitt assaults was no longer continuous. Indeed, nothing in the record demonstrates that, by the time she testified at trial, MG had lost her ability to distinguish between memories of assaults that she had repressed and later recovered and memories of assaults that were continuous.

■ The defendant relies upon the equivocation and hesitation in MG's testimony as demonstrating her inability to distinguish between repressed and continuous memories. We find nothing, however, in MG's testimony indicating that her equivocation and hesitation stemmed from an inability to distinguish repressed from continuous memories. In fact, MG stated during *voir dire* that she was trying to avoid testifying to events that she had been instructed not to discuss. We thus conclude that the trial court acted within its discretion by not striking her testimony as unreliable under *Hungerford*.

## II. Motion for Mistrial

The defendant next argues that a mistrial was required because a statement made by MG irreparably prejudiced him. During trial, the prosecutor asked MG about a conversation she had with KG on the evening of December 24, 2000, following the altercation with the defendant. MG described the conversation:

> [W]e were just like talking,—um—and we were like sharing different things. And then the most important thing to me was that—was mom, because we were all out of the house, and mom was still there, and I really feel like I—there were certain things I'm not supposed to talk about here, and I just—I feel like I'm very limited.

Following this statement, the defendant moved for a mistrial, arguing that MG's statement that she felt "very limited" prejudiced him. Specifically, he argued that, in light of the victims' mother's previous testimony indicating that she feared the defendant, the jury would construe MG's statement to suggest that the defendant had been violent toward the victims' mother. The victims' mother had testified before MG. During cross-examination, the victims' mother had asked, "[C]an I tell anybody why I was afraid of [the defendant]?" The defendant did not move to strike this comment.

The prosecutor objected to the defendant's motion for a mistrial, arguing that MG's statement that she felt "very limited" did not irreparably prejudice the defendant because the jury could construe it to mean that MG did not want to say something that she was not allowed to say, and that any potential prejudice could be cured by a jury instruction.

The trial court denied the defendant's motion, reasoning that the jury could infer from MG's statement that she was confused as to the boundaries of the hearsay rule; specifically, as to whether she could testify to what her sister or sister's boyfriend had said in prior conversations. As an additional precaution, however, the court permitted the defendant to draft curative instructions, which the court read to the jury. The trial court instructed the jury "not to speculate as to what [MG] meant or was referring to by her comment," and "to disregard her comment and to not consider it for any purpose." The defendant now asserts that, in light of the other statements made at trial, MG's statement that she felt "very limited" irreparably prejudiced him.

Because the trial court is in the best position to gauge the prejudicial nature of the testimony being challenged, the court's ruling on a motion for mistrial will not be overturned absent an unsustainable

exercise of discretion. *State v. Carbo*, 151 N.H. 550, 554 (2004). To justify a mistrial, the evidence in question must be more than merely inadmissible; it must constitute an irreparable injustice that cannot be cured by jury instructions. *Id.* Where the jury could draw several inferences from challenged testimony, one of which is innocuous, the testimony is not so prejudicial as to be incurable by contemporaneous jury instructions. *See State v. Steele*, 125 N.H. 190, 192 (1984). The jury is presumed to follow a trial court's curative instruction. *State v. Sammataro*, 135 N.H. 579, 582 (1992).

The defendant argues that "the challenged testimony, in context, communicated to the jury that [the defendant] had, on a number of prior occasions, committed a crime." Specifically, he contends that the testimony communicated that the defendant had committed uncharged acts of violence toward his wife. He argues that the "curative instruction here could not repair the harm because ... the curative instruction assumed that the jury might understand MG's feeling as rooted in a concern about the hearsay rules."

The State argues that MG's testimony was "disjointed and ambiguous" and did not "suggest or allude to the specifics of what she had been prevented from mentioning." It acknowledges that "[v]iewed in context, [MG's] comments could have been understood to mean that she was restricted in her ability to talk about the conversation she had with her sister or her concerns for her mother's safety." The State argues that her testimony "did not create any basis for the jury to infer that the testimonial restrictions concerned other criminal acts committed by the defendant." Moreover, the State argues that "[a]ny potential prejudice stemming from [MG's] comment was effectively eliminated by the court's instruction to the jury" because the instruction "conveyed the message that testimonial restrictions are commonplace during trial, and that such restrictions, and [MG's] remark in particular, should be accorded no significance."

We agree with the State that, even in light of potentially prejudicial testimony by other witnesses, a jury could have construed MG's statement of feeling "very limited" as an expression of frustration and confusion with limitations upon what she could testify to. This statement did not clearly refer to the defendant's past acts of violence toward the victims' mother, and was, thus, ambiguous. Given that the jury could have drawn several inferences from MG's statement, at least one of which was innocuous, we find that the statement was not so suggestive of other criminal conduct as to be incurable by a contemporaneous jury instruction. *Cf. Steele*, 125 N.H. at 192. The trial court's curative instruction clearly instructed the jury to

disregard MG's remark and not draw any inferences from it; thus it sufficiently cured any prejudice stemming from MG's statement. Accordingly, we conclude that the trial court did not err in refusing to grant a mistrial.

*Affirmed.*

DALIANIS, GALWAY and HICKS, JJ., concurred.