Strafford
No. 2005-694

THE STATE OF NEW HAMPSHIRE

v.

DONALD W. MORRILL a/k/a "SAM" W. MORRILL

Argued: October 3, 2006
Opinion Issued: December 19, 2006

*Kelly A. Ayotte*, attorney general (*Stephen D. Fuller*, senior assistant attorney general, on the brief and orally), for the State.

*Theodore Lothstein*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

GALWAY, J. The defendant, Donald W. Morrill, appeals his conviction for aggravated felonious sexual assault, *see* RSA 632-A:2, III (1996), arguing that the Trial Court (*Fauver*, J.) erred by admitting hearsay evidence and by allowing the prosecutor to improperly comment upon his decision not to testify. We reverse and remand.

The jury could have found the following facts. In 1998, the defendant's stepdaughter, N.N., reported to her biological father, L.N., that the defendant had sexually abused her. In late April 1998, L.N. reported N.N.'s disclosure to the authorities. The New Hampshire Division for Children, Youth and Families (DCYF) began investigating the allegations. Approximately one week after the disclosure N.N. recanted, claiming that she had lied about the abuse because her father had convinced her to do so. Eventually, the case was closed without any prosecution. In June 1998, L.N. petitioned for custody of N.N., citing the investigation of the defendant as justification for granting him custody. L.N. obtained temporary custody, but within days custody was returned to N.N.'s mother. This custody dispute remained unresolved when L.N. died in October 1998.

In December 2000, DCYF received, from N.N.'s mother, a second report that the defendant had abused N.N. DCYF attempted to interview N.N., but she was unresponsive. Without further meaningful contact between DCYF and N.N. or her mother, the case was closed in November 2001.

In December 2001, N.N. made a third disclosure of abuse, this time to her guidance counselor. That disclosure was reported to the Strafford County Attorney's Office, which, in January 2002, conducted a videotaped interview of N.N. Following this interview, the defendant was indicted for sexually abusing N.N.

In 2003, the defendant was convicted of aggravated felonious sexual assault. That conviction was reversed and remanded. *See State v. Morrill*, 151 N.H. 331 (2004). Upon remand, the defendant was again convicted of sexually abusing N.N. This appeal followed.

On appeal, the defendant contends that the trial court erred by: (1) allowing the State to introduce inadmissible hearsay evidence; (2) violating his rights under the State and Federal Constitutions by admitting this hearsay; and (3) permitting the prosecutor to comment upon his decision not to testify.

As to the first issue, after N.N.'s first disclosure was reported to the authorities, L.N. was interviewed by Sergeant Erin Commerford, formerly of the New Hampshire State Police. During that interview, it appeared to Sergeant Commerford that N.N. might have reported the abuse to her father some time before he contacted the authorities. Therefore, she asked him why he had delayed in reporting the abuse. He responded that he had been unsure about what to do and did not want to "get anyone in trouble." Because he died before the matter was brought to trial, the State sought to introduce, through Sergeant Commerford, L.N.'s statements regarding the timing of his report to the authorities.

The defendant objected, arguing that the statements were inadmissible hearsay and, in addition, barred by *Crawford v. Washington*, 541 U.S. 36 (2004). The State countered that the statements were admissible because they fell within an exception to the rule against hearsay, and, even if they did not, the defendant had "opened the door" to their admission. The trial court ruled that the statements were not hearsay because they were not offered for their truth. Additionally, the trial court ruled that the defendant had opened the door to the statements and that the statements were not barred by *Crawford*.

On appeal, the State conceded at oral argument that the statements were offered for their truth, and does not contend that they fall within an exception to the hearsay rule. Accordingly, we conclude that L.N.'s statements to Sergeant Commerford were hearsay and, thus, inadmissible under the rules of evidence. *See State v. Bennett*, 144 N.H. 13, 19 (1999) (noting that narratives of past state of mind or belief are incompetent hearsay).

■ Having concluded that the statements were inadmissible hearsay, we must determine whether the trial court properly admitted them under the "opening the door" theory. We note that the term "opening the door" is conclusory. *State v. Rogan*, 151 N.H. 629, 631 (2005). At one time the phrase referred to the doctrine of "curative admissibility." *Id.* Under that doctrine, a trial judge has discretion to admit otherwise inadmissible evidence in order to rebut prejudicial evidence that has already been erroneously admitted. *State v. Benoit*, 126 N.H. 6, 20 (1985). The doctrine applied "only when inadmissible evidence has been allowed, when that evidence was prejudicial, and when the proffered testimony would counter that prejudice." *Id.* We have, however, expanded the meaning of the phrase "opening the door" beyond the doctrine of "curative admissibility." *Id.*

■ "Opening the door" is now more broadly applied to situations in which one party has created a misleading advantage, and the opponent is

then permitted to use previously suppressed or otherwise inadmissible evidence to directly counter the misleading advantage. *State v. Carlson*, 146 N.H. 52, 56 (2001); *see also* Gilligan & Imwinkelried, *Bringing the "Opening the Door" Theory to a Close: The Tendency to Overlook the Specific Contradiction Doctrine in Evidence Law*, 41 SANTA CLARA L. REV. 807 (2001). This doctrine, sometimes known as the doctrine of "specific contradiction," applies when one party introduces evidence that provides a justification beyond mere relevance for an opponent's introduction of evidence that may not otherwise be admissible. *Rogan*, 151 N.H. at 631. The initial evidence must have reasonably created a misimpression or misled the fact-finder in some way. *Id.* The rule thus prevents a party from successfully excluding evidence favorable to his opponent and then selectively introducing this evidence for his own advantage, without allowing the opponent to place the evidence in proper context. *Carlson*, 146 N.H. at 56. The fact that the "door has been opened," however, does not, by itself, permit all evidence to pass through. *State v. Trempe*, 140 N.H. 95, 99 (1995). The doctrine is intended to prevent prejudice and is not to be subverted into a rule for injection of prejudice. *Id.*

▆ We acknowledge that our prior decisions have, to some degree, blurred the distinction between the two doctrines described above. *See* Estabrook, *Opening the Door: New Hampshire's Treatment of Trial Court Rebuttal Evidence*, 46 N.H.B.J. 30 (2005). To prevent confusion that might arise from the use of the term, when a party uses the term "opening the door" or its equivalent as justifying the admission of otherwise inadmissible evidence, the party should make clear which of the above doctrines is being invoked. This is so because the two doctrines are invoked by different types of evidence—"curative admissibility" is triggered by the erroneous prior admission of inadmissible evidence, while "specific contradiction" is triggered by the introduction of misleading admissible evidence. Identifying the particular doctrine will permit more focused discussions between litigants and judges and will prevent further erosion of the unique requirements of each doctrine.

Turning to the matter before us, we note that the admissibility of evidence is generally within the trial court's sound discretion. *Rogan*, 151 N.H. at 631. Because the trial court is in the best position to gauge the prejudicial impact of particular testimony, we will not upset its ruling absent an unsustainable exercise of discretion. *Id.* at 631-32. To show that the trial court's exercise of discretion was unsustainable, the defendant bears the burden of establishing that the decision was clearly unreasonable to the prejudice of his case. *Id.* at 632.

■ We conclude first that the doctrine of "curative admissibility" does not apply. The State contends that the defendant's arguments, and the testimony he elicited, made L.N.'s statements relevant and necessary. The State does not contend, however, that the arguments and testimony presented by the defendant were themselves inadmissible. As the erroneous admission of evidence is required to invoke curative admissibility, the doctrine of curative admissibility is not applicable here.

■ We also conclude that the doctrine of "specific contradiction" does not apply. That doctrine applies where one party creates a misleading advantage and the opponent may use previously suppressed or otherwise inadmissible evidence to counter the misleading advantage. *Rogan*, 151 N.H. at 631. As noted previously, the initial evidence must have reasonably created a misimpression or have misled the fact-finder in some way. *Id.* Based upon our review of the record, we conclude that the defendant did not create a misleading advantage.

When ruling on the admissibility of L.N.'s statements during trial, the trial court found that the defendant's theory of the case was that L.N. had fabricated the allegations against him in order to gain an advantage in his custody dispute over N.N. The trial court then determined that the defendant "is creating a false impression because he is presenting a theory of the case that is directly controverted by statements of the person he is implicating in his allegations of wrongdoings." Thus, the trial court permitted the State to introduce L.N.'s statements because they "would give a more complete picture of [L.N.'s] involvement in this case, and place[] the defendant's statements and insinuations in the proper context." In other words, because the State had evidence directly contrary to the defendant's theory of the case, the defendant created a false impression and the State was entitled to introduce its evidence to give proper context. Notably absent from the trial court's ruling is any finding that the defendant's initial theory or supporting evidence had reasonably created a misimpression or had misled the jury in some way. Instead, the trial court found that the defendant must have misled the jury because the State had evidence directly contrary to his theory. The mere existence of contrary evidence does not, however, mean that the defendant's initial theory and supporting evidence were misleading.

On appeal, the State argues that the defendant's theory at trial was that L.N. had delayed reporting the matter to the authorities until doing so was advantageous to him in his custody dispute. According to the State, this theory and its supporting evidence left the jury with a misleading impression about L.N.'s motivations for delaying his report, and,

therefore, it was justified in introducing L.N.'s statements as an alternative explanation for the delay. We disagree.

■ Prior to Sergeant Commerford taking the stand, the jury had heard the testimony of L.N.'s sister. She testified that before L.N. informed the authorities of the abuse, he had asked her to speak with N.N. regarding N.N.'s allegations against the defendant. In response to questioning from the State, L.N.'s sister testified that after speaking with N.N., she told L.N. that he should report the matter, but that he said he was afraid to do so because reporting it might "backfire" on him and cause N.N. to be taken from him. Therefore, the State presented the jury with admissible evidence directly contradicting the defendant's theory, which placed any potentially misleading evidence into proper context, without resort to inadmissible hearsay. Because the State had presented admissible evidence supporting its alternative explanation for L.N.'s delay, introducing L.N.'s inadmissible hearsay for the same purpose was unnecessary. *See Trempe*, 140 N.H. at 99 (the opening the door rule is not to be subverted into a rule for the injection of prejudice). As each side had presented admissible evidence regarding L.N.'s motivation to delay, the defendant did not create a misleading advantage and did not open the door. We conclude, therefore, that the trial court erred when it admitted L.N.'s hearsay testimony. *Rogan*, 151 N.H. at 632.

The State contends that the trial court's error was not an unsustainable exercise of discretion because the defendant has failed to demonstrate that it was clearly unreasonable to the prejudice of his case. The State does not argue that the error was harmless beyond a reasonable doubt, however. We hold that the defendant has carried his burden of demonstrating prejudice.

The central issue in this case was whether N.N. was truthful when she initially disclosed the abuse or when she later recanted it. L.N.'s statements to Sergeant Commerford tended to show that N.N. was truthful when she initially disclosed the abuse. These statements tended to establish that N.N. disclosed the abuse before L.N. reported the abuse to the police. These statements thus tended to disprove the defendant's theory that L.N. fabricated the abuse allegation to gain advantage in the custody dispute. As the defendant argues: "[T]he testimony prejudiced [him] because it impermissibly bolstered N.N.'s credibility on the central issue in the case—whether her initial disclosure, or her subsequent recantation, constituted the truth."

We conclude that, in this way, the defendant has met his burden of demonstrating that the trial court's error was clearly unreasonable to the prejudice of his case. Accordingly, we hold that the trial court's error

constituted an unsustainable exercise of discretion. Because the State has not argued harmless error, we reverse and remand for a new trial.

In light of our holding, we need not reach the defendant's remaining appellate arguments.

*Reversed and remanded.*

BRODERICK, C.J., and DALIANIS, DUGGAN and HICKS, JJ., concurred.