NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Carroll
No. 2018-0464

THE STATE OF NEW HAMPSHIRE

v.

TIMOTHY BARR

Argued: October 10, 2019
Opinion Issued: November 22, 2019

Gordon J. MacDonald, attorney general (Elizabeth A. Lahey, assistant attorney general, on the brief, and Susan P. McGinnis, senior assistant attorney general, orally), for the State.

Thomas Barnard, senior assistant appellate defender, of Concord, on the brief and orally, for the defendant.

DONOVAN, J. The defendant, Timothy Barr, appeals his convictions, following a jury trial in the Superior Court (Ignatius, J.), of two counts of manufacturing, and one count of possessing, child sexual abuse images. See RSA 649-A:3, :3-b (2016). He argues that: (1) RSA chapter 649-A (2016 & Supp. 2018), as applied, violates his right to the freedom of speech guaranteed under the First Amendment to the United States Constitution and Part I, Article 22 of the New Hampshire Constitution because the images underlying

his convictions depict legal sexual conduct; and (2) the trial court erred by denying his request to cross-examine the minor depicted in the images about her prior sexual history. We affirm because child pornography depicting an actual child remains a category of speech that is unprotected by the First Amendment, and the trial court's decision to deny the defendant's cross-examination request was not an unsustainable exercise of discretion.

## I. Facts

The jury could have found the following facts. The defendant and a 16-year-old minor were engaged in a consensual sexual relationship.[1] The defendant took multiple photographs and one video of the minor performing fellatio on him. The minor also sent the defendant a sexually explicit photograph and video of herself. In July 2017, the minor's parents discovered that she was talking with an older man, found photographs that she was sending the defendant, and called the police.

During their investigation, police found sexually explicit photographs and videos of the minor stored on the defendant's phone and in an online conversation between him and the minor. The police found no evidence that the defendant distributed the photographs or videos to anyone. Based upon this evidence, the State charged the defendant with nine counts of manufacturing, and two counts of possessing, child sexual abuse images.

During opening statements at trial, the State characterized the minor as "unsure of how to act, so [the defendant] made sure to tell her where and how to stand, what to wear, how to [perform fellatio], actions that were unnatural to [the minor] who was nearly half his age." Following opening statements, the defendant requested that the trial court permit him to question the minor regarding her prior sexual history, arguing that the State opened the door to such evidence by commenting that the act of fellatio was "unnatural" to the minor. Specifically, the defendant proffered that, in an interview with the child advocacy center, the minor stated that she had two prior sexual relationships and had previously photographed her sexual activity. The defendant requested permission to cross-examine the minor about these statements. The State countered that it used "unnatural" because, "[i]f this were a natural thing [the minor] would do," the defendant would not have had to instruct her. The defendant responded that the word "unnatural" "carries the intimation that this is the first time she's ever done it."

---

[1] Under our laws, a 16-year-old may consent to sexual intercourse. See RSA 632-A:3, II (Supp. 2018) (categorizing as a class B felony engaging "in sexual penetration with a person" who is under 16 years of age, in certain circumstances); RSA 632-A:4, I (b), (c) (Supp. 2018) (categorizing as a class A misdemeanor subjecting an individual under 16 years of age to sexual contact or engaging in sexual penetration with an individual under 16 years of age in certain circumstances); State v. Holmes, 154 N.H. 723, 728 (2007).

The trial court acknowledged that "unnatural" "is kind of a loaded word and in retrospect it probably would have been better to say it differently," but concluded that providing the defendant the opportunity to cross-examine the minor about her prior sexual history was a "significant [] step" that was unnecessary given the comment. The trial court therefore denied the defendant's request to allow him to cross-examine the minor about her prior sexual history or prior photographic documentation of that sexual history.[2]

At the close of the State's case, the defendant moved to dismiss the indictment or, in the alternative, for a directed verdict of acquittal, arguing that RSA 649-A:3 and :3-b were unconstitutional as applied to him because they violated his right to the freedom of speech guaranteed under the Federal and State Constitutions. He argued that because the sexual conduct depicted in the photographs and videos was lawful, and because he did not distribute them, they did not constitute child pornography under First Amendment case law and he thus had a right to manufacture and possess them. The trial court denied the defendant's motion, concluding that, because the photographs and videos depict an actual child engaging in sexual conduct, the statute was constitutional as applied.

However, the trial court granted the defendant's request for a jury nullification instruction upon finding that the Child Sexual Abuse Images statute's statement of purpose describing the intent to proscribe the exploitation of "children under the age of 16," RSA 649-A:1, II (2016), is internally inconsistent with the statute's definition of a child as "any person under the age of 18 years," RSA 649-A:2, I (2016).[3] Nonetheless, the jury found the defendant guilty of two counts of manufacturing child sexual abuse images, with respect to the video and one photograph of the minor performing fellatio, and one count of possessing child sexual abuse images, with respect to the sexually explicit video of the minor. This appeal followed.

_____

[2] We note that, although the trial court denied the defendant's request to cross-examine the minor about these specific statements, the minor testified that she occasionally took photographs of her sexual intercourse with the defendant and later deleted them, agreed with the statement that it was not a big deal to take the photographs, and testified that the defendant was "one of my . . . players . . . to sleep with."

[3] The Child Sexual Abuse Images statute's statement of purpose discusses the exploitation of children through commercial networks, and declares "this chapter makes the dissemination of visual representations of children under the age of 16 engaged in sexual activity illegal . . . ." RSA 649-A:1, II. Before 2009, the statute defined "[c]hild" as "any person under the age of 16." RSA 649-A:2, I (2007) (repealed 2009). However, the definitions portion of the statute was re-enacted in 2009 to define a child as "any person under the age of 18 years." RSA 649-A:2, I; Laws 2008, 323:1. The legislature is free to define a child as a person under the age of 18 for child pornography purposes. See New York v. Ferber, 458 U.S. 747, 764 & n.17 (1982). However, we note that it may wish to address this statutory inconsistency. The judge instructed the jury: "Even if you find that the State has proven each and every element of the offense charged beyond a reasonable doubt you may still find the Defendant not guilty if you have a conscientious feeling that a not guilty verdict would be a fair and just result in this case."

II. Analysis
A. As-Applied First Amendment Challenge

The defendant first argues that, as applied to his conduct, RSA chapter 649-A is unconstitutional under the First Amendment to the United States Constitution and Part I, Article 22 of the New Hampshire Constitution. As an initial matter, the State contends that the defendant's claim under the State Constitution is waived because it is insufficiently briefed. Our policy of deciding issues under the State Constitution before turning to the Federal Constitution is well-established. See State v. Ball, 124 N.H. 226, 232 (1983). However, off-hand invocations of the State Constitution that are supported by neither argument nor authority warrant no consideration. See Sumner v. N.H. Sec'y of State, 168 N.H. 667, 672 (2016) (citing Keenan v. Fearon, 130 N.H. 494, 499 (1988)). Aside from one case noting that the State Constitution provides at least as much protection as the Federal Constitution, the defendant cites no authority interpreting, and makes no substantive argument regarding, Part I, Article 22 of the State Constitution in support of his contention that his convictions contravene the preservation of free speech contained therein.[4] This argument is therefore insufficiently presented for our consideration, and we consider it waived. See Keenan, 130 N.H. at 499. We proceed to his First Amendment claim, which we review de novo. State v. Zidel, 156 N.H. 684, 686 (2008).

RSA 649-A:3-b, I, criminalizes the manufacture of child sexual abuse images and in relevant part states, "No person shall knowingly create, produce, manufacture, or direct a visual representation of a child engaging in or being engaged in sexually explicit conduct, or participate in that portion of such visual representation that consists of a child engaging in or being engaged in sexually explicit conduct." RSA 649-A:3, I(a) criminalizes the possession of child sexual abuse images and in relevant part states, "No person shall knowingly . . . [b]uy, procure, possess, or control any visual representation of a child engaging in sexually explicit conduct . . . ." The statute defines "[c]hild" as "any person under the age of 18 years." RSA 649-A:2, I.

The First Amendment, applicable to the states through the Fourteenth Amendment, "prohibits laws that abridge the freedom of speech." NIFLA v. Becerra, 138 S. Ct. 2361, 2371 (2018). "As a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." Ashcroft v.

---

[4] The only New Hampshire case that the defendant cites in support of his substantive free speech argument is State v. Zidel, which was decided entirely on First Amendment grounds. Zidel, 156 N.H. 684, 686 (2008) ("[B]ecause we are required to follow federal constitutional law, an analysis under the State Constitution is unnecessary. We therefore decide this case under the First and Fourteenth Amendments to the Federal Constitution.").

American Civil Liberties Union, 535 U.S. 564, 573 (2002) (brackets and quotation omitted). The protection of speech afforded by the First Amendment extends to "the right to receive information and ideas." Stanley v. Georgia, 394 U.S. 557, 564 (1969).

There are, however, certain categories of speech which historically have been unprotected by the First Amendment. Brown v. Entertainment Merchants Assn., 564 U.S. 786, 791 (2011) (listing obscenity, incitement, and fighting words as examples of such categories). In New York v. Ferber, 458 U.S. 747, 756, 764 (1982), the United States Supreme Court held that child pornography is such a category of speech, largely unprotected by the First Amendment. See Zidel, 156 N.H. at 687-88 (explaining how Ferber established this categorical exception); see also Rodney A. Smolla, 2 Smolla and Nimmer on Freedom of Speech § 14:50 (2019) ("The Supreme Court has . . . ruled that the use of children as subjects in the depiction of pornography, as well as possession of such pornography, falls outside First Amendment protection."). The defendant's central thesis is that images depicting a lawful sexual relationship with a child are protected by the First Amendment. We disagree.

We canvassed the United States Supreme Court cases developing and refining the definition of material that is considered child pornography and thus unprotected by the First Amendment in Zidel, 156 N.H. at 687-92, and it is unnecessary to recount that history at length here. The Court in Ferber, 458 U.S. at 757, 765, held that the "the production and distribution" of child pornography is unprotected by the First Amendment for several reasons, chief among them that "[t]he prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." "When a definable class of material . . . bears so heavily and pervasively on the welfare of children engaged in its production, we think . . . that it is permissible to consider these materials as without the protection of the First Amendment." Id. at 764.[5]

In Osborne v. Ohio, 495 U.S. 103, 109-11 (1990), the Court again cited the interest in "protecting the victims of child pornography" in holding that states may criminalize the possession and viewing of child pornography without offending the First Amendment. The Court then, in Ashcroft v. Free Speech Coalition, 535 U.S. 234, 239, 256 (2002), limited the scope of material that is unprotected by the First Amendment, holding that a statute criminalizing the possession or distribution of "sexually explicit images that appear to depict minors but were produced without using any real children" was unconstitutionally overbroad. That statute prohibited speech which, "[i]n contrast to the speech in Ferber, . . . records no crime and creates no victims

---

[5] The Court in Ferber was aware of interstate differences in defining the age at which individuals are considered children for child pornography purposes. See Ferber, 458 U.S. at 764 n.17. Some states set the age of majority at 18, some at 16, and others at various points in-between. Id.

by its production." Id. at 250. "Where the images are themselves the product of child sexual abuse," however, "Ferber recognized that the State had an interest in stamping it out without regard to any judgment about its content." Id. at 249.

After reviewing this trilogy of cases, we concluded in Zidel that RSA 649-A:3 (2007) was unconstitutional as applied to "the possession of materials depicting heads and necks of identifiable minor females superimposed upon naked female bodies, where the naked bodies do not depict body parts of actual children engaging in sexual activity," in part because its application did not further the protection of the "'physical and psychological health of a minor.'" Zidel, 156 N.H. at 693, 696 (quoting Ferber, 458 U.S. at 756-57). The images at issue in Zidel were protected by the First Amendment because they were not made with actual children and not distributed, and thus did not result in harm to any child. Id. at 693.

The defendant argues that Ashcroft and Zidel suggest that child pornography is not a "free-standing exception to [] First Amendment" protection, but "a specific application of a more general exception for speech that is closely connected with an illegal act." He contends that this suggestion was driven home by the United States Supreme Court in United States v. Stevens, 559 U.S. 460 (2010), decided after Zidel.

Before turning to Stevens, we pause to note that child pornography made with actual children is considered an independent category of speech unprotected by the First Amendment by myriad federal appellate courts in decisions issued after Stevens. See United States v. Hotaling, 634 F.3d 725, 728 (2d Cir. 2011) ("[I]t is settled law that child pornography is not protected expressive speech under the First Amendment."); Free Speech Coalition, Inc. v. Attorney General of U.S., 677 F.3d 519, 533 n.9 (3d Cir. 2012) ("It is long-settled that child pornography depicting actual children is not protected under the First Amendment."); United States v. Moreland, 665 F.3d 137, 140 (5th Cir. 2011) ("Child pornography is not protected by the First Amendment because the State has a compelling interest in safeguarding the well-being of minors." (quotation omitted)); Doe v. Boland, 698 F.3d 877, 883 (6th Cir. 2012) (listing child pornography as a category of speech unprotected by the First Amendment); United States v. Fletcher, 634 F.3d 395, 402 (7th Cir. 2011) ("[C]hild pornography is unprotected by the First Amendment . . . ."); United States v. Anderson, 759 F.3d 891, 894 (8th Cir. 2014) ("[T]he Supreme Court [has] recognized child pornography as one . . . category of material . . . not entitled to First Amendment protection." (quotation omitted)); United States v. Laursen, 847 F.3d 1026, 1034 (9th Cir. 2017) ("[T]he Supreme Court has made it crystal clear that child pornography is not constitutionally protected."); United States v. Brune, 767 F.3d 1009, 1018 (10th Cir. 2014) ("The Supreme Court has upheld laws that criminalize the production and distribution of child pornography."); United States v. Dean, 635 F.3d 1200, 1204 (11th Cir. 2011)

("[C]hild pornography is not protected by the First Amendment because it is produced using actual minors . . . ."); see also United States v. Alvarez, 567 U.S. 709, 717-18 (2012) (plurality opinion) (listing child pornography as a category of speech with "a historical foundation in the Court's free speech tradition" that is unprotected by the First Amendment).

In Stevens, 559 U.S. at 464-65, 482, the Court held unconstitutional under the First Amendment a statute criminalizing the creation, sale, or possession of a depiction of animal cruelty when such conduct is intended for commercial gain in interstate or foreign commerce. The Supreme Court declined the government's invitation to hold that speech depicting animal cruelty is categorically unprotected by the First Amendment. Id. at 472. Relying, in part, upon language from the Ferber decision, the government proposed a "simple balancing test" between the value of speech and its societal costs to determine categories of speech that are unprotected by the First Amendment. Id. at 470. The Supreme Court rejected such a test as "startling and dangerous" and noted that the Court's classification of "categories of speech as fully outside the protection of the First Amendment" did not rest "on the basis of a simple cost-benefit analysis." Id. at 470-71. The Court explained that its reasoning in Ferber rested, in part, upon the balance between the "compelling interest in protecting children from abuse, and that the value of using children in these works . . . was de minimis." Id. at 471. But its decision "did not rest on this balance of competing interests alone." Id. (quotation omitted). Rather, Ferber was also grounded in a "previously recognized, long-established category of unprotected speech"; that is, speech which is "'used as an integral part of conduct in violation of a valid criminal statute.'" Id. (quoting Ferber, 458 U.S. at 761-62).

The defendant interprets this language in Stevens as supporting his contention that the speech at issue must bear a close causal connection to criminal activity to be categorically unprotected by the First Amendment because it is child pornography. On this point, we agree. See Stevens, 559 U.S. at 471; Zidel, 156 N.H. at 693. The criminal activity underlying child pornography is "the production of such materials, an activity illegal throughout the Nation." Stevens, 559 U.S. at 471 (quotation omitted); see Free Speech Coalition, 535 U.S. at 254 ("In the case of the material covered by Ferber, the creation of the speech is itself the crime of child abuse . . . ."). As the Eighth Circuit Court of Appeals recently explained, "[w]hen the Court spoke of speech used as an integral part of conduct in violation of a 'valid criminal statute,' it was referring to statutes forbidding the production of child pornography." United States v. Rouse, 936 F.3d 849, 851-52 (8th Cir. 2019); see Anderson, 759 F.3d at 894 (explaining that Stevens noted that Ferber held child pornography was categorically unprotected "because it involved visual depictions that were produced through sexual abuse of one or more children"). The defendant argues, however, that the "images at issue here depict[] lawful consensual activity" and were not distributed and thus were not "an integral

7

part of conduct in violation of a valid criminal statute." This argument miscomprehends Ferber, as explained by Stevens. See Rouse, 936 F.3d at 851-52.

In Rouse, the Eighth Circuit considered, and rejected, the defendant's argument here on facts nearly identical to those now before us. See Rouse, 936 F.3d at 850-52. There, the court considered the constitutionality, under the First Amendment, of a defendant's indictment on child pornography charges stemming from videos he took of his consensual sexual activity with a 16-year-old minor. Id. at 850-51. The defendant did not send the videos to anyone but the minor, and their sexual relationship was legal. Id. at 850, 851. He argued that Stevens only placed child pornography "outside the scope of the First Amendment . . . if it is integral to a violation of a separate statute that criminalizes sexual abuse of a minor." Id. at 851. According to Rouse, the images were protected by the First Amendment because the minor "had reached the age of consent . . . , and consented to engage in sexual activity with [him], the government alleges no crime or sexual abuse other than the production and distribution of child pornography." Id.

The Eighth Circuit disagreed, concluding that the crime underlying the child pornography exception is "the unlawful production of the images themselves." Id. at 852 (citing Stevens, 559 U.S. at 471). Because the defendant's actions were "intrinsically related to the unlawful production of" the images, they were "categorically unprotected under the First Amendment," "even if the sexual activity [was] legal . . . ."[6] Id.

We agree with the Eighth Circuit that Stevens did not disturb the Supreme Court's previous holdings that producing and possessing images of an actual child engaged in sexual activity are unprotected by the First Amendment, regardless of whether the underlying sexual activity was legal.[7] See Osborne, 495 U.S. at 111; Ferber, 458 U.S. at 765; Rouse, 936 F.3d at 852. The criminal conduct underlying child pornography is not statutory rape,

---

[6] The defendant in Rouse, 936 F.3d at 850, was charged with distributing child pornography, while the defendant here argues that the fact that he did not distribute the images weighs in favor of finding his conviction unconstitutional. He posits that "[f]or [the minor] and [him], the images here were not 'pornography'; they were a chronicle of their own lawful, intimate relationship." The defendant in Rouse, however, only distributed the images to the 16-year-old herself, and thus the circumstances are substantially similar to those here. See Rouse, 936 F.3d at 850. We thus do not apprehend that difference as a basis for distinguishing Rouse.

[7] We note that Stevens was not a case concerning child pornography. See Stevens, 559 U.S. at 464-65. The Supreme Court discussed child pornography in Stevens as a means of explaining why it would not find that images depicting animal abuse are unprotected speech. See id. at 470-72. We are hesitant to reconceptualize the First Amendment child pornography doctrine based upon a case in which the issue was not presented. See Central Va. Community College v. Katz, 546 U.S. 356, 363 (2006) ("[W]e are not bound to follow our dicta in a prior case in which the point now at issue was not fully debated.").

but recording a child engaged in sexual conduct. See Stevens, 559 U.S. at 471. Furthermore, the images need not be distributed to implicate that criminal conduct. See Osborne, 495 U.S. at 109-10; Ferber, 458 U.S. at 764. When determining whether an image is unprotected by the First Amendment, "[t]he underlying inquiry is whether [it] implicates the interests of an actual minor." Hotaling, 634 F.3d at 729; see Ferber, 458 U.S. at 764-65 (noting that depictions of sexual conduct that "do not involve live performance" of children "below a specified age" retain First Amendment protection).

The defendant's actions at issue here were intrinsically related to the production of child pornography with an actual child, implicating her interests, and thus the defendant's conduct falls outside the scope of First Amendment protection.[8] See Rouse, 936 F.3d at 852. Furthermore, the minor's interests were affected by the production of the photograph and videos at issue here despite the fact that she was old enough to consent to the sexual activity and the defendant was not charged with distributing the photograph and videos.

As we explained in Zidel, "the purpose of RSA 649-A:3 is to prevent harm to children resulting from their 'use as subjects in sexual performances.'" Zidel, 156 N.H. at 693 (quoting RSA 649-A:1). Neither the harm described there, nor the harm articulated in Ferber, that "the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child," Ferber, 458 U.S. at 758, is not implicated merely because the underlying conduct, i.e. the sexual activity, is legal. Consenting to sexual intercourse and consenting to having that act memorialized, potentially forever, are decisions of different degrees, with corresponding consequences of different magnitudes. See Fletcher, 634 F.3d at 403 (commenting that the legislature "may legitimately conclude that even a willing or deceitful minor is entitled to governmental protection from self-destructive decisions that would expose him or her to the harms of child pornography" (quotation omitted)); see also Miller v. Alabama, 567 U.S. 460, 471 (2012) (recognizing that children have a "lack of maturity and an underdeveloped sense of responsibility, leading to recklessness, impulsivity, and heedless risk-taking" (quotation omitted)). Nor are those harms not implicated simply because the images are not distributed. See United States v. Ortiz-Graulau, 526 F.3d 16, 19 (1st Cir. 2008) (noting that "preventing exploitation of children could be aided by the [the federal child pornography] statute's broad ban on taking such photographs even for private use"). Accordingly, we conclude that RSA 649-A:3 and :3-b are not unconstitutional as applied to the defendant.

---

[8] We note that the defendant does not argue that the First Amendment applies differently to his manufacturing child sexual abuse images convictions than to his conviction for possession of such images.

9

We next address the defendant's argument that the trial court erred by denying his request to cross-examine the minor about her prior sexual history in response to the State's opening statement.  In its opening statement, the State made the following remarks:

> The Defendant, the adult, used [the minor].  He directed her to obtain images and videos of a sexually explicit nature.  She was unsure of how to act, so he made sure to tell her where and how to stand, what to wear, how to [perform fellatio], actions that were <u>unnatural</u> to [the minor] who was nearly half his age.

(Emphasis added.)  The defendant maintains that the State's use of the word "unnatural" opened the door to admit evidence about the minor's prior sexual history and experience taking sexual photographs, because the State intimated that the minor was sexually inexperienced when she was not, and therefore may have improperly biased the jury against him.

We review a trial court's decision regarding the admissibility of evidence under the opening the door doctrine pursuant to the unsustainable exercise of discretion standard.  See State v. DePaula, 170 N.H. 139, 146 (2017).  To prevail, the defendant must show that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case.  State v. Plantamuro, 171 N.H. 253, 255 (2018).  If the record establishes that a reasonable person could have reached the same decision as the trial court on the basis of the evidence before it, we will uphold the trial court's decision.  Id.

The State argues that the defendant has not preserved this claim because he did not argue to the trial court that the State's use of the word "unnatural" was prejudicial.  To preserve an argument that the trial court erroneously excluded evidence at trial, a party generally must make an offer of proof that apprises the trial court of the specific nature of the evidence and why it is admissible.  Id. at 259.  The defendant met this threshold, by proffering the specific statements about which he sought to cross-examine the minor and by arguing that the State's comment rendered admissible, or opened the door to, this evidence to correct the misimpression that the comment may have created.  Accordingly, we reject the State's preservation argument.

Remarks in opening statements may trigger the "opening the door" doctrine.  See State v. Nightingale, 160 N.H. 569, 579 (2010).  That doctrine itself subsumes two distinct doctrines, the "curative admissibility" and the "specific contradiction" doctrines.  DePaula, 170 N.H. at 146.  The curative admissibility doctrine applies when inadmissible, prejudicial evidence has been erroneously admitted, and the party prejudiced by the admission seeks to introduce other evidence to counter the prejudice.  Id.  The specific

contradiction doctrine applies when a party introduces admissible evidence that creates a misleading advantage for that party, and the opposing party is then allowed to introduce previously suppressed or otherwise inadmissible evidence to counter the misleading advantage. Id. The defendant argues that, under either doctrine, the trial court erred by refusing his request to admit evidence of the minor's prior sexual history and history of taking sexual photographs.

We need not decide which doctrine applies here because the defendant has failed to show that the trial court's exercise of discretion was unsustainable under either. The trial court found that the State used "unnatural" in reference to certain actions being unnatural, and impliedly found that the State did not represent the minor as "a sexual innocent." The trial court therefore concluded that admitting evidence of the minor's prior sexual history was unwarranted.

The trial court's conclusion that the State used "unnatural" to describe a specific instance of fellatio and did not represent the minor as a sexual innocent was reasonable because in that instance the defendant apparently instructed the minor on how to perform the act. In light of this reasonable determination, the "unnatural" comment did not warrant admission of the minor's prior sexual history because it did not create the presumption that she had never engaged in sexual activity before, only that she was not performing fellatio as the defendant preferred in that instance. Therefore, the comment created neither prejudice, as required by the curative admissibility doctrine, nor a misleading advantage, as required by the specific contradiction doctrine.

One additional matter bears brief discussion. Since drawing the distinction between the curative admissibility and specific contradiction doctrines, our jurisprudence on this topic has applied only the specific contradiction doctrine, not the curative admissibility doctrine. See, e.g., DePaula, 170 N.H. at 146; State v. Mazzaglia, 169 N.H. 489, 495 (2016); State v. Gaudet, 166 N.H. 390, 396 (2014); Nightingale, 160 N.H. at 579; State v. Wamala, 158 N.H. 583, 589 (2009); State v. White, 155 N.H. 119, 124 (2007); see also State v. Morrill, 154 N.H. 547, 549-50 (2006) (drawing the distinction between the two but applying neither). Here, the defendant at trial invoked only the opening the door doctrine, but focuses his argument on appeal on the curative admissibility doctrine. We therefore take the opportunity to reaffirm what we stated in Morrill: "To prevent confusion that might arise from the use of the term, when a party uses the term 'opening the door' or its equivalent as justifying the admission of otherwise inadmissible evidence, the party should make clear which of the above doctrines is being invoked." Morrill, 154 N.H. at 550. Under the curative admissibility doctrine, "a trial judge has discretion to admit otherwise inadmissible evidence in order to rebut prejudicial evidence that has already been erroneously admitted." Id. at 549. Under the specific contradiction doctrine, a trial judge has discretion to admit "previously

11

suppressed or otherwise inadmissible evidence to directly counter the misleading advantage" triggered by the introduction of admissible evidence. Id. at 550. "Identifying the particular doctrine will permit more focused discussions between litigants and judges and will prevent further erosion of the unique requirements of each doctrine." Id.

### III. Conclusion

For the reasons stated above, we affirm the defendant's convictions for manufacturing and possession of child sexual abuse images. We consider as waived any arguments raised in the defendant's notice of appeal, but not briefed. State v. Fiske, 170 N.H. 279, 292 (2017).

Affirmed.

HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.