# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2019-0522, <u>State of New Hampshire v. Miguel R. Rasor</u>, the court on December 30, 2020, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). Following a jury trial in the Superior Court (<u>Houran</u>, J.), the defendant, Miguel R. Rasor, was convicted of three counts of aggravated felonious sexual assault (AFSA), <u>see</u> RSA 632-A:2, II, III (2016), two counts of felonious sexual assault (FSA), <u>see</u> RSA 632-A:3, III (2016), and one count of attempted FSA, <u>see</u> <u>id</u>.; RSA 629:1 (2016). On appeal, he argues that the trial court erred by failing to admit evidence under the opening-the-door doctrine. We affirm.

The relevant facts follow. The victim, who was eleven and twelve years old at the time of the charged conduct, is the defendant's step-daughter. The defendant is married to the victim's mother, whose ex-husband is the victim's biological father (father). The evidentiary issue before us involves the mother and father, and the State's assertions during its opening statement about what it anticipated the mother's testimony would be at trial. In its opening statement, the State said:

> Now I want to talk, for a minute, about [the victim's] mom, the Defendant's wife . . . . I'm sure that hearing her testify you will form your own opinion of her, but I believe, during her testimony, that it will be made clear to you that she has a bias for the Defendant. Please keep in mind, during her testimony, that she has chosen to stay with the Defendant. She is still married to him and she is still living with him. [S]he is still his wife. Furthermore, she owns a business with him. Her livelihood is actually tied to the Defendant. And obviously, she doesn't want what [the victim] says to be true. If it is true, then not only has her husband betrayed her in the most egregious way possible, but whether it's fair or not, she might not feel she may not look like a very good mother.

> So you're going to hear that [mother] has engaged in some behavior that one would not expect of a mother who[se] child is alleging sexual abuse. You're going to hear that she has allowed her children to have contact with the Defendant, even after she

disclosed this abuse — [the victim] disclosed the abuse. You're going to hear that she's tried to make [the victim] feel guilty about these charges, even going so far as to show [the victim] the indictments and confront her with them. And she's also going to try to point the finger at another perpetrator, her ex-husband, [father], this man who I said they all have this great relationship with.

> You'll hear that as early as that forensic interview that I mentioned [the victim] did, she was already trying to point the finger at her ex-husband, to say, [the victim] just might be confused, I think it was her biological father that did this. And she tries to push this belief on the police and on her daughter. In doing so, she talks to the police about a period of time when [the victim] was in the second or third grade, where her father . . . was bathing her, rather than having her bathe herself. She points to this and [father's] habit of slapping [the victim] on the rear-end as a reason why [he] is the real perpetrator in this case. And [father] will tell you that he did bathe [the victim] when she was in the second or third grade, that she did not have the hygiene and that he was just doing what he thought he should as a father, that he was open about it. It was not something he would do secretly in the middle of the night. And that, when [mother] had a talk with him about how [the victim] was getting too old for this, he stopped.

The next day, during cross-examination of father, the defendant sought to introduce evidence that when father was approximately twenty-five years old, he had sexual intercourse with the mother, who was twelve years old at the time. The State objected, and the defendant asserted that the State's opening statement had opened the door to this evidence. The defendant argued that, in its opening, the State recited a list of the mother's self-serving reasons explaining why she believes that father, not the defendant, committed the charged crimes. Therefore, according to the defendant, he was entitled to introduce evidence tending to show that the mother had a legitimate reason for suspecting father; specifically, that she and father had sexual intercourse when he was approximately twenty-five and she was twelve.

After hearing argument from both parties, and listening to recordings of portions of the State's opening and father's testimony on direct, the trial court ruled that the evidence was inadmissible under the opening-the-door doctrine. It concluded that the curative admissibility doctrine did not apply and that the State had not opened the door under the specific contradiction doctrine. It further concluded that even if the State had opened the door, the proffered evidence was unfairly prejudicial. The defendant was subsequently convicted on three counts of AFSA, two counts of FSA, and one count of attempted FSA. See RSA 632-A:2, II, III; RSA 632-A:3, III; RSA 629:1. This appeal followed.

We review a trial court's decision regarding the admissibility of evidence under the opening-the-door doctrine pursuant to the unsustainable exercise of discretion standard. State v. Barr, 172 N.H. 681, 692 (2019). To prevail, the defendant must show that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case. Id.

The opening-the-door doctrine itself subsumes two distinct doctrines, the "curative admissibility" doctrine and the "specific contradiction" doctrine. Id. The curative admissibility doctrine applies when inadmissible, prejudicial evidence has been erroneously admitted, and the party prejudiced by the admission seeks to introduce other evidence to counter the prejudice. Id. The specific contradiction doctrine applies when a party introduces admissible evidence that creates a misleading advantage for that party, and the opposing party is then allowed to introduce previously suppressed or otherwise inadmissible evidence to counter the misleading advantage. Id. The two subsidiary doctrines are thus "invoked by different types of evidence — 'curative admissibility' is triggered by the erroneous prior admission of inadmissible evidence, while 'specific contradiction' is triggered by the introduction of misleading admissible evidence." State v. Morrill, 154 N.H. 547, 550 (2006).

Remarks made in opening statements may trigger the opening-the-door doctrine. Barr, 172 N.H. at 692. Because an opening statement is not itself evidence, State v. Martin, 138 N.H. 508, 516 (1994), when applying the opening-the-door doctrine to opening statements, the precise question becomes whether the opening statement, by referencing anticipated evidence, opens the door to otherwise inadmissible evidence. See Barr, 172 N.H. at 692-93; State v. Nightingale, 160 N.H. 569, 579-80 (2010).

Here, the defendant argues that the State's opening statement opened the door under the curative admissibility doctrine or, alternatively, under the specific contradiction doctrine. Under either doctrine, the defendant asserts that the State's opening statement "opened the door to evidence that [mother] legitimately suspected that [father] was the perpetrator because [father] had sex[ual intercourse] with her when she was the victim's age."

Assuming without deciding that the trial court erred in concluding that the State's opening statement did not open the door under either doctrine, we hold that the defendant has failed to show that the trial court unsustainably exercised its discretion in finding that the proffered rebuttal evidence was unfairly prejudicial under the opening-the-door doctrine.

When a party presents inadmissible, prejudicial evidence or evidence that creates a misleading advantage, "the opposing party has a particularly strong interest in being able to refute such evidence." State v. DePaula, 170

3

N.H. 139, 149 (2017) (discussing this strong interest, under the specific contradiction doctrine, in refuting admissible evidence that creates a misleading advantage).  Rebuttal evidence sought to be admitted through the opening-the-door doctrine is evaluated, not by its relevance to the charged conduct, but by its ability, and whether it is necessary, to counter the prejudice or misleading advantage created by the other party's opening of the door.  See, e.g., id. at 141, 147-48; State v. Cannon, 146 N.H. 562, 563, 564-66 (2001); see also Nightingale, 160 N.H. at 580 (holding trial court reasonably could have found that defense counsel's opening statement created a misleading impression and that the rebuttal evidence at issue "was necessary to counter this misleading impression").

Further, the opening-the-door doctrine functions to allow the admission of "otherwise inadmissible" evidence.  Barr, 172 N.H. at 693-94 (explaining that both subsidiary doctrines facilitate the admission of otherwise inadmissible evidence); State v. Wamala, 158 N.H. 583, 591 (2009) ("[T]o the extent that the defendant argues that the opening-the-door doctrine does not allow the admission of hearsay evidence, he is mistaken.  Under either . . . doctrine, the court has the discretion to admit otherwise inadmissible evidence.").  Thus, the fact that the evidence at issue here may be, as the defendant acknowledges, inadmissible under New Hampshire Rule of Evidence 404(b), does not itself render the evidence inadmissible pursuant to the opening-the-door doctrine.

However, "the fact that the door has been opened does not, by itself, permit all evidence to pass through." Wamala, 158 N.H. at 590 (quotation omitted).  The opening-the-door doctrine "is intended to prevent prejudice and is not to be subverted into a rule for the injection of prejudice," and we recognize that the trial court is in the best position to gauge the prejudicial impact of particular testimony.  State v. Gaudet, 166 N.H. 390, 396 (2014).

The defendant argues that, under the curative admissibility doctrine, the State's opening statement referenced inadmissible, prejudicial evidence by claiming that the mother's "professed disbelief of [the victim] was dishonest" and that her real motives for disbelieving her daughter's allegations against the defendant "were selfish and financial."  He argues that, under the specific contradiction doctrine, the State's opening "created the misimpression that [mother] feigned skepticism of the victim's allegations for her own selfish reasons."  Under both doctrines, the defendant asserts that he was entitled to introduce evidence of prior sexual conduct between the mother and father to show a legitimate reason why the mother suspected that father — not the defendant — was the one sexually assaulting the victim in order to counter the prejudice or misleading advantage created by the State's opening statement.

We conclude that the trial court did not unsustainably exercise its discretion in finding the proffered rebuttal evidence unfairly prejudicial under the opening-the-door doctrine.  The trial court reasonably could have found

that, at the time of its ruling, any prejudice or misleading advantage created by the State's opening had been directly countered by evidence already admitted at trial, rendering the admission of the defendant's proffered evidence unnecessary. "Although the trial court did not expressly make this finding, we assume it made all subsidiary findings necessary to support its decision." Smith v. Lillian V. Donahue Trust, 157 N.H. 502, 508 (2008). Compare Morrill, 154 N.H. at 551-52 (concluding that trial court unsustainably exercised its discretion in admitting rebuttal evidence, noting whatever misleading impression the defendant may have given the jury about a father's delay in reporting his daughter's abuse had already been countered by admissible evidence that directly countered this theory), with Wamala, 158 N.H. at 590-91 (concluding, under the specific contradiction doctrine, that victim's admissible testimony about prior assaults "did not directly counter the defendant's theory that she fabricated her allegations against him" and therefore "trial court reasonably could have determined that introducing otherwise inadmissible hearsay evidence . . . was necessary").

By the time the defendant attempted to introduce the evidence regarding prior sexual conduct between the mother and father, testimony had already been admitted showing that the mother knew that father had been bathing the victim when she was approximately nine and ten years old, that the mother knew this behavior made the victim uncomfortable, and that the mother had to tell father to stop bathing their daughter. Notably, testimony had already been admitted that the victim told the mother that she had lied about her allegations against the defendant. Furthermore, by the time of the court's ruling, the evidence showed that many of the victim's claims against the defendant were alleged to have taken place while the mother was present, albeit sleeping. In contrast, the evidence also showed that the victim continued to live with father part-time, where the mother knew father had previously engaged in behavior that made their daughter uncomfortable. The trial court reasonably could have determined that this evidence tended to provide legitimate reasons to explain why, as the defendant avers on appeal, the mother suspected that father — not the defendant — was sexually assaulting the victim,[1] and, thus, that this evidence had directly countered any prejudice or misleading advantage created by the State's opening statement. See Smith, 157 N.H. at 508; cf. Morrill, 154 N.H. at 552 ("[T]he State presented the jury with admissible evidence directly contradicting the defendant's theory, which placed any potentially misleading evidence into proper context, without resort to inadmissible hearsay.")

The intent behind the opening-the-door doctrine is to "prevent prejudice," Gaudet, 166 N.H. at 396, and the trial court, at the time of its ruling, reasonably could have found that the proffered evidence was not needed to

---

[1] We note that the defendant acknowledged during oral argument that there was other evidence admitted at trial that tended to show legitimate reasons why the mother suspected father as the perpetrator and not the defendant.

"prevent prejudice" given the other evidence adduced at trial as described above, see Smith, 157 N.H. at 508; Nightingale, 160 N.H. at 580; cf. Morrill, 154 N.H. at 551-52.  The opening-the-door doctrine "is not to be subverted into a rule for the injection of prejudice," and, accordingly, we cannot conclude that the trial court, which is in the best position to gauge the prejudicial impact of particular testimony, unsustainably exercised its discretion in finding that the evidence of prior sexual conduct between the mother and father was unfairly prejudicial under the opening-the-door doctrine.  Gaudet, 166 N.H. at 396; see Wamala, 158 N.H. at 590 ("The fact that the door has been opened does not, by itself, permit all evidence to pass through." (quotation omitted)).

We are not persuaded by the defendant's arguments that our decisions in DePaula and Nightingale compel a different result.  In both cases, we affirmed the trial court's decision to admit evidence through the opening-the-door doctrine as a sustainable exercise of discretion, and in neither did we observe that evidence admitted prior to the trial court's relevant ruling rendered the rebuttal evidence at issue unnecessary.  Cf. DePaula, 170 N.H. at 147-48; Nightingale, 160 N.H. at 579-80.  See generally State v. Pennock, 168 N.H. 294, 302 (2015) ("Our only function on review is to determine whether a reasonable person could have reached the same decision as the trial court on the basis of the evidence before it." (quotation omitted)).

"In determining whether a ruling is a proper exercise of judicial discretion, we consider whether the record establishes an objective basis sufficient to sustain the discretionary decision made."  Pennock, 168 N.H. at 302 (quotation omitted); see also Smith, 157 N.H. at 508.  Here, we cannot conclude that at the time of the trial court's ruling, it unsustainably exercised its discretion in finding the defendant's proffered rebuttal evidence unfairly prejudicial under the opening-the-door doctrine.  Arguments raised in the defendant's notice of appeal that were not briefed are considered waived.  See Barr, 172 N.H. at 694.

Affirmed.

HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,
Clerk**

6